No. 61,958

STATE OF KANSAS, *Appellee*, v. STEPHEN DEAN REED, *Appellant*.

(809 P.2d 553)

Opinion filed April 12, 1991.

*Lucille Marino*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, and *Benjamin C. Wood*, former chief appellate defender, were with her on the briefs for appellant.

*Edwin A. Van Petten*, deputy attorney general, argued the cause, and *Robert T. Stephan*, attorney general, and *Stacie Kennon*, legal intern, were with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: Stephen Dean Reed appeals from the district court's order denying his motion to withdraw his plea of nolo contendere to first-degree murder (K.S.A. 21-3401) and the subsequent denial of his motion for reconsideration.

As the underlying facts are significant to the determination of the issues, they must be set forth in some detail. On March 17, 1986, Jimmy Ray Vanderlinden was found dead in his residence near Galena, Kansas. The victim had been bound hand and foot and had been shot three times in the back of the head. As a result of the ensuing investigation, multiple felony charges were filed against Susan Diane Vanderlinden (the victim's wife), Luke Patrick Callihan, and the defendant herein. It was the State's theory that the wife had hired Callihan to kill her husband. Callihan, in turn, had subcontracted the job to the defendant. Callihan, pursuant to a plea bargain, pled guilty to conspiracy to commit murder (a class C felony) in exchange for the dismissal

of the other charges and his testimony against Mrs. Vanderlinden and the defendant herein.

At the Vanderlinden trial, Callihan testified he had been hired by her to kill her husband; he had then hired defendant to kill the victim; he had transported defendant to the area of the victim's residence on the night in question; and the following day defendant advised him he had killed the victim by shooting him three times in the back of the head. Dennis Orton, a friend of Callihan, testified that Callihan and the defendant had come to his home the morning after the murder where Callihan advised him defendant had committed the murder and obtained money from Orton so defendant could leave town. Two weeks later, defendant returned and advised Orton that he had killed the victim. There was evidence certain property was taken from the victim's person and from his residence at the time of the killing.

Defendant's attorney sat in on the Vanderlinden jury trial and became familiar with the evidence. Mrs. Vanderlinden was found guilty on all counts: first-degree murder, aggravated kidnapping, aggravated robbery, aggravated burglary, and solicitation to commit first-degree murder. Her convictions were subsequently affirmed in an unpublished opinion of this court (case No. 60,995, filed July 8, 1988).

Defendant's jury trial was scheduled to commence on March 9, 1987. On that morning, defendant entered his plea of nolo contendere to first-degree murder. As a part of the plea bargain, the State dismissed the balance of the charges, removed the allegation that a firearm had been used, and agreed to arrange for defendant and Callihan to be incarcerated in different institutions. Sentencing was set for April 23, 1987. The sentencing was ultimately rescheduled. On April 30, 1987, defendant filed his motion to withdraw his plea. On May 4, 1987, the matter came before the district court for hearing on the motion and for sentencing. The motion was denied and a life sentence was imposed. Defendant filed this appeal from the denial of his motion to withdraw his plea. Later, the case was remanded to the district court for hearing of defendant's motions for reconsideration and for rendition of out-of-state witnesses. Both motions were denied. Issues relative to each of these motions are also before us.

For his first issue, defendant contends the district court abused its discretion in denying his motion to withdraw his nolo contendere plea.

K.S.A. 22-3210 sets forth the procedures for acceptance and withdrawal of guilty or nolo contendere pleas as follows:

"(a) Before or during trial a plea of guilty or *nolo contendere* may be accepted when:

(1) The defendant or counsel for the defendant enters such plea in open court; and

(2) in felony cases the court has informed the defendant of the consequences of the plea and of the maximum penalty provided by law which may be imposed upon acceptance of such plea; and

(3) in felony cases the court has addressed the defendant personally and determined that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea; and

(4) the court is satisfied that there is a factual basis for the plea.

"(b) In felony cases the defendant must appear and plead personally and a verbatim record of all proceedings at the plea and entry of judgment thereon shall be made.

"(c) In traffic infraction and misdemeanor cases the court may allow the defendant to appear and plead by counsel.

"(d) A plea of guilty or *nolo contendere*, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged. To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea."

We described the procedure for accepting a plea of nolo contendere in *State v. Dillon*, 242 Kan. 410, 413, 748 P.2d 856 (1988), as follows:

"[B]efore a plea of nolo contendere may be accepted, K.S.A. 1986 Supp. 22-3210 requires the trial court to inform the defendant of the consequences of the plea and the maximum penalty provided by law which may be imposed upon the acceptance of such a plea. The court must also address the defendant personally and determine that the plea is made voluntarily and with understanding of the nature of the charge and the consequences of the plea. The court must also determine that there is a factual basis for the plea. This procedure basically follows Rule 11 of the Federal Rules of Criminal Procedure, compliance with which is held to be mandatory upon the federal courts in *McCarthy v. United States*, 394 U.S. 459, 22 L. Ed. 2d 418, 89 S. Ct. 1166 (1969), and which procedure is fastened upon the state courts as a requirement of due process. *Boykin v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969); *White v. State*, 222 Kan. 709, 713, 568 P.2d 112 (1977). K.S.A. 22-3210 was enacted following the *Boykin* decision. See *Widener v. State*, 210 Kan. 234, 237-38, 499 P.2d 1123 (1972)."

Prior to accepting the plea herein, the district court went through an extensive explanation of the results of the plea and what rights defendant would be foregoing. The district court carefully questioned the defendant in all pertinent regards. Defendant's responses to all questions were appropriate and consistent with his expressed desire to enter a nolo contendere plea of the *Alford* variety (*North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 [1970]) (to be discussed later). Defendant does not complain that the procedure and format utilized relative to the plea were defective or deficient in any way. Rather, he contends the plea was not voluntary as he was under stress, suffering from a migraine headache, and under the influence of aspirin, muscle relaxants, and valium. He also asserts his below average intelligence may have made him unable to understand the plea. He also alleges he was under pressure to accept the plea.

Part of the district court's questioning of the defendant was as follows:

"THE COURT: The plea agreement has been specified here on the record. Do you understand fully the terms of that agreement?

"MR. REED: Yes, sir.

"THE COURT: Has anyone made any kind of threats or promises to you to induce you to plead nolo contendere to this?

"MR. REED: No, sir.

"MR. DOSH [Defendant's attorney]: Steve, by that the Judge means other than what has been stated within the plea negotiations.

"MR. REED: As what we just stated and you wrote down and Mr. Van Petten's [State's attorney] talked about?

"THE COURT: Right.

"MR. REED: Nobody's made any threats.

"THE COURT: I understand that in the terms of the agreement itself there have been some concessions by the State to your benefit, specifically by dismissing certain Counts, by guaranteeing that you will not be in the same institution with another co-defendant, Callihan, and that the State has stipulated that you will be eligible for parole after the expiration of fifteen (15) years. I understand that those promises or agreements have been made with you, but aside from that no one's done anything to cause you to plead nolo contendere to this?

"MR. REED: Yes, sir, nobody's did nothing.

"THE COURT: Also, you are giving up a right to an appeal to a higher court by giving up your right to a trial. Do you understand that?

"MR. REED: Yes, sir."

Defendant's attorney, Edward Dosh, then engaged in the following colloquy with his client:

"Steve, as you know I have been representing you now I think since the first part of September I believe. Do you believe that you've had all the time you need to think about this and fully consider all the ramifications and what you're doing today is what you want to do at this point in time?

"MR. REED: Can I state the truth?

"MR. DOSH: Yes.

"MR. REED: Actually, the fact is I did not do it. But due to the people that I am dealing with as wanting to testify against me and what I seen in the Vanderlinden case and what she was found guilty on it would be to my best advantage, if there is an advantage to pleading to something that I will state now that I did not do.

"I understand all my rights, everything you've said to me. My counsel has been excellent I feel and I have no other choice, sir, than to go this way. It's best on my family and all concerned.

"MR. DOSH: Okay, Steve. In other words, you understand all the ramifications of what you're doing here today?

"MR. REED: Yes.

"MR. DOSH: And you understand and we've discussed this at great length between you and myself and also your dad to a lesser extent. In many ways what you're doing here, I guess you might say, considering your alternatives that appears at this point in time to be the best thing for you to do.

"MR. REED: Exactly.

"MR. DOSH: Despite what you've told me; is that correct?

"MR. REED: Exactly.

"MR. DOSH: And are you satisfied with my representation in this matter?

"MR. REED: Yes, sir.

"MR. DOSH: Thank you. I don't think I have anything further, Your Honor."

A defendant, while maintaining his or her innocence, may, for a variety of reasons, wish to enter a plea of nolo contendere.

In *North Carolina v. Alford*, 400 U.S. 25, defendant was indicted for first-degree murder, the penalty for which was death unless the jury recommended life imprisonment. Defendant claimed he was innocent. He agreed, however, to plead guilty to second-degree murder because he was otherwise faced with the threat of a death penalty if the case went to trial. There was substantial evidence that indicated Alford's guilt. He was sentenced to 30 years' imprisonment. The Fourth Circuit Court of Appeals reversed, holding that the guilty plea was involuntary because of the defendant's fear motivation. The U.S. Supreme

Court vacated the judgment of the Fourth Circuit, holding, *inter alia*, there was no constitutional error in accepting a guilty plea which contained a protestation of innocence when the defendant intelligently concluded that his interest required entry of a guilty plea and the record before the judge contained strong evidence of actual guilt. The Court said:

"The issue in *Hudson v. United States*, 272 U.S. 451, [71 L.Ed. 347, 47 S.Ct. 127] (1926), was whether a federal court has power to impose a prison sentence after accepting a plea of *nolo contendere*, a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty. The Court held that a trial court does have such power, and, except for the cases which were rejected in *Hudson*, the federal courts have uniformly followed this rule, even in cases involving moral turpitude. [Citations omitted.] Implicit in the *nolo contendere* cases is a recognition that the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence.

"These cases would be directly in point if Alford had simply insisted on his plea but refused to admit the crime. The fact that his plea was denominated a plea of guilty rather than a plea of *nolo contendere* is of no constitutional significance with respect to the issue now before us, for the Constitution is concerned with the practical consequences, not the formal categorizations, of state law. [Citations omitted.] Thus, while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. *An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.*

"Nor can we perceive any material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." 400 U.S. at 35-37. (Emphasis supplied.)

In the case before us, the defendant and his counsel had the opportunity of knowing exactly what the State's evidence would consist of as the Vanderlinden trial had already been held. The outcome of the Vanderlinden trial was also known.

It is not surprising that the defendant felt he was under stress. It would be an unusual person who would not feel stressful when confronting a trial involving charges of the magnitude herein.

There is really nothing in the record, other than defendant's testimony at the hearing on his motion some two months later, to support his claims that the plea was not free and voluntary. The record supports the finding that the plea was his free and voluntary act.

In *Noble v. State*, 240 Kan. 162, 727 P.2d 473 (1986), defendant contended his plea was not voluntary because, *inter alia*, tests indicated his mental competency was in the dull to normal intelligence range. We rejected this argument. 240 Kan. at 167-69. The test for mental competency in a trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 4 L. Ed. 2d 824, 80 S. Ct. 788 (1960). The transcript of the plea proceedings indicates that defendant met the requirements of the test and was mentally competent to make the plea.

The standard for a judicial abuse of discretion, the allegation lodged herein, is as follows:

"Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court. If reasonable people could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Leeper v. Schroer, Rice, Bryan & Lykins, P.A.*, 241 Kan. 241, Syl. ¶ 6, 736 P.2d 882 (1987).

There is simply no showing that the district court herein acted arbitrarily, fancifully, or unreasonably. The plea transcript underscores the court's ruling that the plea was freely entered and properly accepted and does not support defendant's contention that the plea was entered in haste, confusion, fear, and resignation. Clearly, it cannot be said that no reasonable person would take the view of the trial court.

Likewise, there is little merit in defendant's contention that the district court lacked a factual basis for the plea. The factual basis was stated succinctly by the prosecutor prior to the acceptance of the plea. Further, the trial court took judicial notice of the evidence in the Vanderlinden case, which included devastating testimony of defendant's guilt. When a prosecutor pre-

sents the evidence to the court, and that evidence shows that all elements of the crime are present, a factual basis for a plea has been reached. See *State v. Calderon*, 233 Kan. 87, 93, 661 P.2d 781 (1983).

We find no abuse of judicial discretion in this issue.

We turn now to defendant's second issue. Did the trial court abuse its discretion in denying defendant's motion for reconsideration?

At the hearing on the motion to reconsider, Dr. Robert Schulman, a clinical psychologist, testified that an aggregate of factors, including defendant's poor comprehension skills, stress, medication, and lack of sleep rendered defendant unable to make voluntary statements on the day of his plea agreement, March 9, 1987.

Defendant testified that he regretted the plea agreement within hours after making it and did not understand what a nolo contendere plea really was.

The court, on February 12, 1990, overruled defendant's motion. In arriving at its decision the court stated:

"Counsel, I'm sure you're aware I'm torn in this case. On the one hand, I firmly believe that everyone is entitled to a fair trial. But on the other hand, the defendant in this case was certainly afforded the opportunity for a fair trial and by reason of his decision to enter his plea on the morning of trial constituted a waiver of that right.

"So as you know and as I said, I'm somewhat torn in this case. But I think the balancing consideration is whether or not the defendant can show me anything that would warrant a withdrawal of this plea.

"Now as I understand it from examining volumes of statements and volumes of information submitted to me on both sides, the defendant apparently has two basic defenses here; one of which is an alibi defense. I've taken care of that by a prior ruling. And the second one is—I suppose this is what you would have to consider newly discovered evidence, if there is any. The theory apparently is, first, Kenny Sanders discussed with one— Kenny Heistand discussed with Richard Sanders the fact that Sanders was hired to do this murder. The problem is he won't talk. He's refused to tell anybody about it except apparently Mr. Heistand. So all you've got is hearsay evidence that's going to be inadmissible anyway I assume.

"I think I've already told you earlier that this Kenny Heistand was listed as a witness by the defendant in the Vanderlinden case as early as October of '86, keeping in mind that it was March of '87 when Mr. Reed was to go to trial on these charges. What I'm driving at here is I haven't seen any competent, relevant, credible evidence that would tip the scales one way

or the other. And on more than one prior occasion I have had to consider identical state of affairs and I found nothing that would indicate any reason to change those rulings. I think at this point in time the burden is on the defendant to provide those things.

"So with those comments in mind, the defendant's motion for reconsideration is overruled.

"I want to point out it's a motion to reconsider, it's not a motion of first impression. I've looked at it at least twice now."

It should be noted that the same district judge presided at the Vanderlinden trial and all pertinent stages of the proceedings herein. He was familiar with the evidence, questioned the defendant at the time of the plea and the hearing on the motions, heard his responses to questions, and observed his demeanor.

Applying the previously stated standard for appellate review of claims involving alleged abuse of judicial discretion, we find no merit in this issue.

For his third issue, defendant contends the district court abused its discretion in denying his motion for rendition of two out-of-state witnesses. K.S.A. 22-4210 allows for rendition of prisoners confined in another state for a criminal proceeding in Kansas. The sought-for witnesses were Kenny Heistand and Richard Sanders.

Prior to trial, defendant had filed a notice of intention to present an alibi defense and had listed the names of 17 witnesses to support his defense that he was in Arkansas at the time of the murder. Defendant concedes in his brief that "the strength of a proposed defense is not of paramount importance to a court which is considering a motion to withdraw a plea."

The argument on this issue treats the rendition motion as essentially a motion to withdraw a plea based upon newly discovered evidence. This is an original format. A great deal of hearsay is involved but presumably the evidence would be to the effect Callihan had hired someone else to commit the murder.

Based upon the record before us, we find no abuse of discretion in the district court's denial of the rendition motion.

The judgment is affirmed.