No. 83,787

STATE OF KANSAS, *Appellee*, v. AHMAD BEY, *Appellant*.

(17 P.3d 322)

Opinion filed January 26, 2001.

*Patrick H. Dunn*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Julie E. Richey*, county attorney, argued the cause and *Carla J. Stovall*, attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, C.J.: Ahmad Bey appeals from the district court's denial of his motion to withdraw his nolo contendere plea to the

reduced charge of aiding and abetting intentional second-degree murder (K.S.A. 1998 Supp. 21-3402[a], K.S.A. 21-3205).

Defendant and his brother, Yusif Bey, were each initially charged with premeditated first-degree murder in connection with the March 24, 1999, slaying of Victor Conger. The deceased was killed by a gunshot to the head and was found lying in a Pittsburg intersection. Defendant contends: (1) There was no factual basis supporting his plea; (2) the district court erred in not inquiring into the "package deal" involving the negotiated pleas of defendant and his brother; and (3) new material evidence altered defendant's criminal culpability. The motion to withdraw his plea was made prior to the imposition of sentence herein.

## PROCEDURAL FRAMEWORK

K.S.A. 1999 Supp. 22-3210 governs pleas and provides:

"(a) Before or during trial a plea of guilty or *nolo contendere* may be accepted when:

(1) The defendant or counsel for the defendant enters such plea in open court; and

(2) in felony cases the court has informed the defendant of the consequences of the plea, including the specific sentencing guidelines level of any crime committed on or after July 1, 1993, and of the maximum penalty provided by law which may be imposed upon acceptance of such plea; and

(3) in felony cases the court has addressed the defendant personally and determined that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea; and

(4) the court is satisfied that there is a factual basis for the plea.

. . . .

"(d) A plea of guilty or *nolo contendere*, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged."

In evaluating a motion to withdraw a plea, the trial court should consider whether (1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made. *State v. Taylor*, 266 Kan. 967, Syl. ¶ 6, 975 P.2d 1196 (1999).

On appeal, the appropriate standard of review is whether the district court abused its discretion in refusing to allow withdrawal

of the plea. Defendant bears the burden of showing such abuse of discretion. *State v. Johnson*, 258 Kan. 607, 610-11, 907 P.2d 140 (1995). See *State v. Shears*, 260 Kan. 823, 829-30, 925 P.2d 1136 (1996).

Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. *State v. Davidson*, 264 Kan. 44, 56, 954 P.2d 702 (1998).

## FACTUAL BASIS

K.S.A. 22-3210(a) allows the trial court to accept a plea of guilty or nolo contendere when, among other requirements, the court is satisfied that there is a factual basis for the plea. In determining the factual basis for the plea, the trial court must establish that all elements of the crime charged are present. *State v. Shaw*, 259 Kan. 3, Syl. ¶ 1, 910 P.2d 809 (1996).

Defendant contends the factual basis for the plea was insufficient. We disagree.

Admittedly the factual details of the crime are rather Spartan— in no large degree due to the circumstances. However, the following is clear. The matter herein came before the court on May 21, 1999, after extensive plea negotiations had occurred.

The following transpired:

"THE COURT: Mr. Bey, the state, as I've just indicated, has filed an amended information alleging in that amended information that on or about the 24th day of March, 1999 in Crawford County, Kansas that you Ahmed K. Bey then and there being present did unlawfully, feloniously, willfully and intentionally aid and abet the killing of a human being, to-wit, Victor Lee Conger contrary to KSA 21-3402 (a), commonly called aiding and abetting murder in the second degree, off grid person felony. This is punishable by a life sentence with the possibility of parole after ten years and or a fine of up to $500,000.00.

"Now, do you understand what you are charged with in the amended information and what the potential penalty is."

The court then explained what a preliminary examination was, and defendant waived his preliminary examination after the court carefully explained what defendant would be giving up by his waiver. Defendant was bound over on the amended charge and

the case was called for arraignment. The amended charge was again read to the defendant who indicated he desired to enter a plea of "no contest." The court thoroughly and carefully explained all aspects of entering such a plea and its effect.

The court then asked the State for the factual basis for the plea, and the following colloquy occurred:

"MS. RICHEY [State's attorney]: Yes, Your Honor. Facts are on March 24 of 1999 in Crawford County, Kansas, Ahmad K. Bey did intentionally aid in the commission of the killing of Victor Conger and that he was present during and participated in the robbery of the victim and the victim was shot and killed during the robbery.

"THE COURT: Mr. Dosh, any comments on that factual basis.

"MR. DOSH: I'm not quite sure if that is sufficient to be honest with you.

"THE COURT: That is what I was getting to.

"MS. RICHEY: Then I add with the knowledge of Mr. Bey, it was done with the knowledge of Mr. Bey and Mr. Bey did participate in that.

"THE COURT: Then how does the [S]tate allege he aided and abetted.

"MS. RICHEY: Just a minute, Your Honor.

"(Discussion off the record.)

"MS. RICHEY: Your Honor, we've agreed under the factual basis that the state's evidence would show that Mr. Bey—Mr. Ahmad Bey encouraged Yusif Bey to commit the killing. During the commission of the killing Mr. Bey encouraged him to do that, so enticed and encouraged him to do the shooting.

"THE COURT: Mr. Dosh, any comments.

"MR. DOSH: Your Honor, again, we don't—that is the purpose of a no contest plea. We don't agree that that is true but we do agree that they have evidence that would most likely be presented to the jury to that effect and certainly it is a reasonable probability that the jury could believe that evidence and make a finding of guilt against him.

"THE COURT: Do you concur that there is a sufficient factual basis to support the plea.

"MR. DOSH: Yes. From the reports I've seen.

"THE COURT: And just one more time, Mr. Bey. Again, sir, are you doing this today freely and voluntarily.

"THE DEFENDANT: May I say something to him.

"THE COURT: Go ahead. You can consult with him.

"MR. DOSH: All right, Your Honor, I think we are ready to go ahead.

"THE COURT: Mr. Bey, again, sir, the question was finally are you doing this freely and voluntarily.

"THE DEFENDANT: Yes, sir."

It should also be noted the defendant's motion to enter into the plea agreement filed with the court includes the following statements:

"3)   I received a copy of the Amended Complaint/Information before being called upon to plead. I read the Amended Complaint/Information and have discussed it with my lawyer. I fully understand every charge made against me.

. . . .

"5)   I know that the Court must be satisfied that there is a factual basis for a plea of 'NO CONTEST' before my plea can be accepted. I represent to the Court that I did the following acts in connection with the charges made against me in Count I:

### "COUNT I

"That on or about the 24th day of March, 1999, I did, then and there, unlawfully, feloniously, willfully, and intentionally aided and abetted [*sic*] the killing of a human being to-wit: Victor Lee Conger, in violation of K.S.A. 21-3402(a), and against the peace and dignity of the State of Kansas. (2nd degree Murder) an Off-Grid Person Felony, punishable by mandatory imprisonment for life without parole or post release supervision for a minimum of 10 years and a fine not to exceed $500,000.00.

"6)   My lawyer has counseled and advised me on the nature of each charge, all lesser included charges, and on all possible defenses that I might have in the case."

Later, during the hearing on defendant's motion to withdraw his plea, Mr. Dosh corrected the language contained in the second sentence of paragraph 5 of the agreement; the court accepted that correction. Mr. Dosh indicated that it should have stated, "I represent to the Court that  . . .  if this matter goes to trial that there is likely sufficient evidence that would lead to a conviction for me of . . . count one."

In ruling on the motion to withdraw the plea, the district court stated, *inter alia*:

"I consider the plea agreement along with what was offered in the plea hearing to determine if there has been an appropriate factual basis and I'm doing that.

"The petition to enter a plea agreement indicates, and I'm reading directly from it, that on or about the 24th day of March, 1999 I did then and there unlawfully, feloniously, willfully and intentionally aid and abet in the killing of a human being, to-wit, Victor Lee Conger, this is signed by the defendant. Above that is the language I represent to the Court that I did the following acts in connection with the charges made against me in count one. [As indicated above, this language was later corrected by defense counsel.] The Court took great pains to cover the statutory requirement of KSA 22-3210 and if I have not done so, if I missed something, I would gladly admit it. I certainly recognize I make errors and mis-

takes as anybody does but in looking at the transcript I think we adequately covered what is required in 3210.

"I will admit the factual basis relied upon by the State is succinct. It could have been more elaborate but I think if you look at the factual basis that was agreed upon by the parties that was accepted by the Court, and if you look at the petition to enter a plea agreement and what is contained therein I think there was a sufficient factual basis in order to accept the plea of no contest entered by the defendant."

The lack of a preliminary examination and the restraints placed upon a court making inquiry of a defendant as to the factual basis for a plea of nolo contendere tend to result in less factual material being in the record in such circumstances.

In *State v. Shaw*, 259 Kan. 3, we discussed at length the requirements for a sufficient factual basis for a plea, stating in Syllabus ¶ 6:

"A factual basis for a plea may be satisfied by a complaint or information given or read to the defendant which sets forth the factual details and essential elements of the particular crime charged, by the evidence presented to the court by the prosecutor, by a statement of the facts made by the defendant at the hearing, or if the judge accepting the defendant's plea conducted the defendant's preliminary examination."

Here, the amended information was twice read aloud, and defendant does not allege essential elements were missing from the written complaint. Additionally, the charge was included in defendant's motion to enter plea. He indicated to the court that he had read and discussed the plea agreement with his attorney.

The State recited additional facts, specifically that defendant and his brother were robbing the victim who was killed in the course of that robbery, then added that defendant "enticed him and encouraged" his brother to shoot the victim, and the crime was committed with defendant's knowledge. Defense counsel then agreed that the facts were sufficient to support the plea.

K.S.A. 21-3205(1) provides:

"A person is criminally responsible for a crime committed by another if such person intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime."

An aider or abettor is one who advises, counsels, procures, or encourages another to commit a crime. *State v. Thomas*, 239 Kan.

457, 461, 720 P.2d 1059 (1986). See State v. Davis, 268 Kan. 661, 680, 998 P.2d 1127 (2000) and *State v. Smolin*, 221 Kan. 149, 152-53, 557 P.2d 1241 (1976). As previously noted, in the facts received at the plea, the State advised that defendant encouraged and enticed his brother to shoot the robbery victim.

We conclude no error or abuse of discretion has been shown of the district court's conclusion as to the sufficiency of the factual basis to support the plea of nolo contendere. All elements of the crime were adequately shown to be present.

## PACKAGE DEAL

Both brothers were initially charged with premeditated first-degree murder in connection with the slaying of Victor Conger. Over a period of 2 to 3 weeks, extensive plea negotiations were conducted among the State and counsel for each of the brothers. Discussions were had between both counsel and the brothers. The county attorney advised that if the two cases proceeded to trial, the prosecution thereof would be in the hands of the Kansas attorney general. Any plea agreement involving the county attorney would be required to dispose of the cases against both brothers and would have to be concluded prior to the time the prosecution would be turned over to the attorney general's office.

Ultimately an agreement was reached whereby defendant would plead nolo contendere to aiding and abetting intentional second-degree murder with a life sentence and parole eligibility after 10 years. Brother Yusif would plead to first-degree felony murder with a life sentence serving a minimum of 15 years before becoming parole eligible. Under the original charges each brother, if convicted, would have been faced with life sentences serving either a 25-year or 40-year term before becoming parole eligible.

Although the negotiated pleas of both brothers were heard and accepted by the same court on the same day, apparently no reference was made to the court that disposal of both cases was a condition of the plea agreements. Defendant contends that the court's failure to inquire of him as to the package deal rendered his plea involuntary as the situation was coercive. Defendant contends his brother put pressure on him to accept the deal.

In his motion to enter into the plea agreement, defendant stated, *inter alia*:

"13) I declare that no officer or agent of any branch of government (federal, state or local) has promised, suggested, or predicted that I will receive a lighter sentence, or probation, or any other form of leniency if I plead 'NO CONTEST', except as follows: refer to paragraph (15).

"If anyone else, including my attorney, made such a promise, suggestion, or prediction, except as noted in the previous sentence, I know that he had no authority to do so.

. . . .

"15) My plea of no contest is the result of a plea agreement entered into between the County Attorney, my attorney, and me.

"Since my plea of guilty is the result of a plea agreement, I hereby state that the terms of said agreement are as follows: The state agrees to amend the complaint to a charge of Intentional 2nd Degree Murder. I will enter a plea of 'NO CONTEST' to Count I of the Amended Complaint/Information. Further, I understand the penalty will be mandatory life imprisonment without parole or post release supervision for a minimum of 10 years and that there is no guarantee that I will be released after the minimum 10 years. It is my understanding that life imprisonment will be the sentence despite my previous criminal history. Finally, the state agrees not to, now or forever in the future, file any other charges that may or could have been filed as a result of any and all events and activities that I may have been involved in which preceded the shooting of Victor Lee Conger on or about March 24, 1999 or that followed the shooting of Victor Lee Conger on or about March 24, 1999.

"I fully understand that the Court is not bound by the terms of the plea agreement, and may accept or reject said agreement. If the Court rejects the agreement, I also understand the Court may *not* give me the opportunity to withdraw my plea of guilty."

At the plea hearing, in addition to the usual statements and questions going to voluntariness and understanding, there were extensive questions and answers between defense counsel and defendant. Included therein was the following:

"MR. DOSH: Okay. Do you have any questions about what you are doing or do you fully understand.

"THE DEFENDANT: I fully understand.

"MR. DOSH: And you and I have had numerous conversations both over the phone, letters that I've sent you and also several person-to-person meetings about what we are doing here today; is that correct.

"THE DEFENDANT: Yes, sir.

"MR. DOSH: Okay. And while it may be true that you are not particularly or completely happy with what we are doing here today, this is how you best decided to proceed with this case at this point; is that correct.

"THE DEFENDANT: Yes, sir.

"MR. DOSH: And this is something that you've done knowingly and voluntarily, nobody has forced you to do it; is that correct.

"THE DEFENDANT: Yes, sir.

"MR. DOSH: I told you if it was your desire to go through trial that we would take it to a trial; is that correct.

"THE DEFENDANT: Yes, sir.

"MR. DOSH: Again, do you have any questions about what you are pleading to today or what you are doing.

"THE DEFENDANT: No, sir.

"MR. DOSH: Okay. I don't think I have anything further, Your Honor.

"THE COURT: Actually you are reading my mind. I was going to ask, Mr. Bey, do you have any questions of myself or of Mr. Dosh with regard to what we've said today, what has occurred today, do you feel that you fully understand what is occurring.

"THE DEFENDANT: Yes, sir.

"THE COURT: Have you understood every question I've asked of you.

"THE DEFENDANT: Yes, sir."

Defendant contends that the State's plea offer, which was contingent upon both men accepting the offer and which was available for a limited time, was rendered involuntary by the court's failure to inquire about the nature of this "package deal." Defendant cites *Bordenkircher v. Hayes*, 434 U.S. 357, 54 L. Ed. 2d 604, 98 S. Ct. 663, *reh. denied* 435 U.S. 918 (1978), *United States v. Whalen*, 976 F.2d 1346 (10th Cir. 1992), and *State v. Danh*, 516 N.W.2d 539, 542 (Minn. 1994), and a variety of other cases, in support of his argument on this point.

The State argues these cases are not controlling. The State notes that the United States Supreme Court in *Brady v. United States*, 397 U.S. 742, 25 L. Ed. 2d 747, 90 S. Ct. 1463 (1970), held that the threatened invocation of the death penalty was not coercive so as to invalidate a plea. Further, defendant made no mention of this point during the plea hearing when being closely questioned as to the voluntariness of his plea and, in fact, indicated that the agreement was entered into of his own free will. The State contends that defendant simply changed his mind after the plea was entered, which is an insufficient basis to support a withdrawal of the plea.

In *State v. Reed*, 248 Kan. 506, 809 P.2d 553 (1991), the defendant alleged he was under pressure to accept the plea. There, like here, Reed had indicated during the plea hearing that he understood the terms of the plea agreement and no one had made any threats or promises to him to induce him to plead nolo contendere. Reed also stated that he did not commit the crime but knew that there were people ready to testify against him at trial. Reed testified that he understood his rights but felt like it would be to his advantage to go ahead with the plea. Reed later sought to withdraw his plea, alleging it was involuntary and entered into under pressure.

We first noted in *Reed* that a defendant, while maintaining his or her innocence, may, for a variety of reasons, wish to enter a plea of nolo contendere, citing *North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 106 (1970), which cited *Hudson v. United States*, 272 U.S. 451, 71 L. Ed. 347, 47 S. Ct. 127 (1926). 248 Kan. at 510-11. Additionally, we noted that it was not surprising that Reed felt he was under stress. "It would be an unusual person who would not feel stressful when confronting a trial involving charges of the magnitude herein." 248 Kan. at 511. In Reed's case, everything in the record indicated that the plea was his free and voluntary act.

Here the trial court held the following in denying defendant's motion to withdraw his plea:

"Secondly, was the defendant misled, coerced, mistreated or unfairly taken advantage of. I don't think he was, all things considered. I think this is simply a situation where the defendant has had second thoughts or cold feet. I think one of the cases I read in preparation for this hearing references buyer's remorse. I even read the *Reed* case, the Supreme Court says this is a situation involving buyer's remorse and seems to be what the present case is. Thirdly, was the plea fairly and understandably made. The Court finds that the plea was fairly and understandably made. The plea agreement is very extensive. It covers all the statutory requirements and I think the same is done in the plea hearing. The Court took great pains to make certain the defendant was doing this voluntarily and knowingly and with full awareness of the potential consequences."

Here, as in Reed, everything in the record indicates that defendant was informed of his rights, knew the consequences of entering a plea, understood the rights he was waiving by entering a

plea, had ample opportunity to discuss the plea with his attorney and with his brother, and entered this plea voluntarily and knowingly. The district court did not abuse its discretion in denying the motion on this ground.

We do believe, however, that a discussion of the desirability of disclosure of package deals to the court hearing the plea is appropriate. In this regard we note the Minnesota case of *State v. Danh*, 516 N.W.2d 539 (Minn. 1994), cited by defendant. In *Danh*, 23-year-old Danh and his three codefendants were charged with three counts of assault and three counts of burglary. One of the codefendants was Danh's 19-year-old brother. Shortly before trial the prosecutor offered a plea agreement which was contingent upon all four codefendants pleading. Danh initially told his attorney that he would plead guilty but later informed his attorney that he had changed his mind. Danh's brother then asked to speak with him alone. After this conversation, Danh pled guilty. The trial court conducted a thorough inquiry wherein Danh stated that no promises other than those contained in the petition or stated in court had been made to him. He affirmed that he was not coerced into entering the plea. Neither party explicitly mentioned the contingent nature of the plea at any point in the guilty plea hearing. However, in its later findings denying Danh's motion to withdraw the plea, the judge stated that he "was aware that some sort of a package was being presented to all of the defendants" but "was not a party to the negotiations and did not become aware of the specific details until they were presented in court." 516 N.W.2d at 541 n 3. The Minnesota Court of Appeals affirmed the trial court's denial of Danh's motion to withdraw and the Minnesota Supreme Court accepted review as an issue of first impression.

The Minnesota Supreme Court noted that it had never addressed the issue of a contingent plea agreement in which a defendant agrees to plead guilty in exchange for leniency for a third party. Providing a review of the issue and case law, the court then held:

" 'Package deal' agreements are generally dangerous because of the risk of coercion; this is particularly so in cases involving related third parties, where there is

a risk that a defendant, who would otherwise exercise his or her right to a jury trial, will plead guilty out of a sense of family loyalty.

"In *Bordenkircher v. Hayes*, 434 U.S. 357, 364 n. 8, 98 S. Ct. 663, 668-69 n. 8, 54 L. Ed. 2d 604 (1978), the U.S. Supreme Court stated that these types of agreements 'might pose a greater danger of inducing a false guilty plea by skewing the assessment of the risks a defendant must consider.' Other states and federal circuit courts hold that 'package deal' agreements are not per se invalid. *E.g., In re Ibarra*, 34 Cal. 3d 277, 193 Cal. Rptr. 538, 666 P.2d 980, 986 (Cal. 1983); *United States v. Marquez*, 909 F.2d 738, 741 (2nd Cir. 1990); See also Bruce A. Green, 'Package' Plea Bargaining and the Prosecutor's Duty of Good Faith, 25 Crim. L. Bull. 507, 516-521 (1989). However, several courts hold that this type of plea is per se involuntary if the prosecutor did not have probable cause to charge the third party. See *e.g., In re Ibarra*, 193 Cal. Rptr at 545, 666 P.2d at 987; *United States v. Nuckols*, 606 F.2d 566, 569 (5th Cir. 1979)

. . . .

"Many courts which have addressed this issue note that the trial court must exercise special care to ascertain the voluntariness of such pleas. *E.g., United States v. Tursi*, 576 F.2d 396, 398 (1st Cir. 1978). In practice, however, a thorough, but standard, Fed. R. Crim. P. Rule 11 inquiry will usually be sufficiently probing of voluntariness. See, *Politte v. United States*, 852 F.2d 924, 931 (7th Cir. 1988); *United States v. Usher*, 703 F.2d 956, 958 (6th Cir. 1983).

"We are not prepared at this time to adopt a rule that 'package deal' plea agreements are per se invalid. We believe, however, that such agreements are fraught with danger, and that the standard Minn. R. Crim. P. 15.01 inquiry cannot adequately discover coercion in these cases. We therefore hold that the state must fully inform the trial court of the details of these agreements at the time a defendant enters a 'package deal' plea, and the trial court must then conduct further inquiries to determine whether the plea is voluntarily made. In future cases, a defendant must be allowed to withdraw his or her guilty plea if the state fails to fully inform the trial court of the nature of the plea, or if the trial court fails to adequately inquire into the voluntariness of the plea at the time of the guilty plea. This holding is in accordance with those cases which hold that trial courts must take extra steps to determine the voluntariness of these types of pleas. *E.g., In re Ibarra*, 193 Cal. Rptr. at 544, 666 P.2d at 986." 516 N.W.2d at 542-43.

A similar situation was considered by the Tenth Circuit Court of Appeals in *U. S. v. Wright*, 43 F.3d 491 (10th Cir. 1994). There, the State had threatened to prosecute Wright's family for mail fraud if he did not plead guilty. Judge Tacha, writing for the court, noted that government threats to prosecute third persons during plea negotiations are not necessarily unconstitutional. However, because such bargaining can pose a danger of coercion and increase the leverage possessed by prosecutors, the government must abide

by a high standard of good faith in using such tactics. Further, citing *Bordenkircher*, 434 U.S. 357, the Tenth Circuit noted that the United States Supreme Court has warned that plea bargains involving adverse or lenient treatment for some person other than the accused might pose a greater danger of inducing a false guilty plea by skewing the assessment of the risks a defendant must consider. The *Wright* court concluded that a plea agreement entailing leniency to a third party imposes a special responsibility on the district court to ascertain the plea's voluntariness due to its possible coercive nature. 53 F.3d at 498. While *Wright* was addressing a slightly different issue, whether threatened charges against a third person during a plea negotiation must be supported by probable cause (they should), *Wright* does encourage caution in cases similar to this one, where a plea agreement is contingent on a family member acquiescing to the agreement. See also *U. S. v. Whalen*, 976 F.2d 1346, 1348-49 (10th Cir. 1992) (guilty plea is involuntary if petitioner pled guilty because of government's threat to charge his wife, petitioner would not have pled guilty but for government threats, and government never intended to charge wife).

Independent research has not revealed any Kansas case law dealing specifically with this question. Neither have the parties to this appeal cited any controlling authority. Nonetheless, these types of package plea agreements do come before the courts in Kansas. See *State v. Johnson*, 258 Kan. 607, 907 P.2d 140 (1995), where defendant sought to withdraw his plea because he believed that his sister was sentenced in contravention of the agreement he reached with the State; whether this type of contingent plea agreement is appropriate was not addressed.

We conclude that, in keeping with the need for a court considering a plea to be fully informed of the terms of the plea agreement in making inquiry as to the voluntariness thereof, disclosure of any package deal terms should be made to the court. This would enable the court to make appropriate inquiry of the defendant as to whether the package deal aspect of the plea agreement renders the plea involuntary. This rule will apply to future cases. However, failure to do so will not automatically render the acceptance of the plea invalid. The greatest risk of coercive conduct lies where the

State, in bad faith, threatens prosecution of a family member when there is no probable cause supporting such a charge. Even though such a package deal may rarely be considered coercive, it is desirable to have such terms before the court in order that appropriate inquiry can be made.

Disclosure of this aspect of the plea at the plea hearing would serve another worthwhile purpose. It would preclude a defendant from taking advantage of the plea agreement and then seeking to nullify a part of its terms by seeking to withdraw his or her plea after the third party's plea has been accepted. This would have been the effect herein as the brother's plea would be unaffected by the withdrawal of defendant's plea. Another beneficial effect of the disclosure of the package deal on the record is that such disclosure should head off any dispute as to exactly what the term was and whether the State had complied with the term.

## NEW MATERIAL EVIDENCE

During the plea hearing, defense attorney Dosh asked defendant if he understood that all the law enforcement reports were not in and that not all the evidence testing had been completed. Defendant answered affirmatively. Defendant indicated that he still wanted to plead no contest. Dosh questioned him about this during the time he was preparing to waive his preliminary hearing, as well as during the actual plea hearing.

Later, when defense counsel filed the motion to withdraw plea, he attached a Kansas Bureau of Investigation report to the motion. The KBI report included a narrative by Detective Hite, wherein Hite relates his contacts with Taj Young, a jail mate of Yusif Bey. Young related to Hite what Yusif had told him about the killing at issue in this case. Most relevant were the following quotes:

"Young told us that Yusif had contacted him and said he had something he wanted to tell him. Yusif told Young that he had shot Victor. Yusif told him said [*sic*] that his brother Ahmad didn't do anything. . . .

. . . .

"Yusif told Taj that after they left Dillons, they went down 24th Street and stopped. Yusif said Victor was bent over counting his money when he (Yusif) tapped him on the shoulder and shot him when he looked up. Yusif told Taj that Victor opened the door and was trying to get out when he shot him. Yusif told

him the car was in drive and Taj thinks he said Ahmad had to put it in park. Yusif told Taj that when he and Ahmad left Victor on the street, he was still alive. Yusif also told Taj that he had to throw the shell from the gun out the window after he shot Victor. Taj said that Yusif told him he only shot him one time.

"Taj told me that Yusif and Ahmad both knew that Victor and Demarrio had just got 3 oz of dope. I asked what kind of dope and Taj said crack. Taj said that Yusif told him they robbed him of the money he was counting and the dope, but didn't say how much of either."

Young indicated to the officer that he was willing to testify about these conversations with defendant's brother.

Dosh stated that he had received the detective's narrative the night before the plea was entered.

On appeal, defendant argues that the investigative report is newly discovered evidence that either exonerates defendant or reduces the level of defendant's involvement in the murder. Defendant asserts that based on this evidence he should be allowed to withdraw his plea and proceed to trial. Defendant likens this situation to a motion for new trial based upon newly discovered evidence. Should that analogy be used, he argues, two requirements must be satisfied: (1) The evidence must be new and could not have been produced at trial with reasonable diligence, and (2) the evidence must be of such materiality that there is a reasonable probability that it would produce a different result upon retrial. Finally, defendant contends, because this evidence was only discovered late the night before the plea hearing, and because it clearly casts doubt on his guilt, these two requirements have been met and he should be allowed to withdraw his no contest plea.

The State argues that this investigative report was provided to defendant as soon as it was received and was given to defense counsel the day before the plea was entered. This, the State argues, is not sufficient to require withdrawal of a plea.

Defendant cites no case law allowing the withdrawal of a guilty plea based on newly discovered evidence. However, this issue is briefly discussed in *State v. Walton*, 256 Kan. 484, 489, 885 P.2d 1255 (1994). Walton had alleged that other evidence discovered after the entry of his plea exonerated him, thus providing good cause for granting the motion to withdraw. The district court con-

ducted a full hearing on the defendant's allegations and considered all the evidence. In the end, the court concluded that Walton's plea was informed and voluntary, and since the evidence did not exonerate defendant, there was no basis for withdrawing the plea. We reviewed the record and believed that the trial court's findings were supported by substantial competent evidence.

Here, the district court also held a full hearing on defendant's motion. The detective's narrative report was attached to defendant's motion and the point was argued to the court. While the district court did not specifically address this evidence in its ruling, it is clear the information was before the court and considered. The report does little to exonerate defendant from the crime at issue. Also, obviously, the brother's knowledge of the crime scene was known to defendant, and defendant had been conferring with his brother during the plea negotiation.

We find no abuse of discretion on this point.

## CONCLUSION

We find no abuse of judicial discretion in the district court's denial of defendant's motion to withdraw his plea of nolo contendere.

The judgment is affirmed.