No. 80,239

STATE OF KANSAS, *Appellee,* v. JOHN S. TAYLOR, *Appellant.*

(975 P.2d 1196)

Opinion filed March 5, 1999.

*Debra J. Wilson,* assistant appellate defender, argued the cause, and *Ryan Kipling Elliot,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, were on the brief for appellant.

*David Lowden,* assistant district attorney, argued the cause, and *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: The primary issue arises under K.S.A. 1998 Supp. 22-3210(d), the statute controlling a criminal defendant's opportunity to withdraw a guilty plea before sentencing (for good cause and within the discretion of the trial court).

John S. Taylor appeals his convictions and sentences for second-degree murder, aggravated burglary, and theft. Taylor entered what counsel and the district court called a *Brady* plea but moved to withdraw his plea on the day of sentencing. (We discuss pleas under *Brady v. United States,* 397 U.S. 742, 25 L. Ed. 2d 747, 90 S. Ct. 1463 [1970], and *North Carolina v. Alford,* 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 [1970], later in the opinion.) Taylor also moved for a continuance because he intended to retain new counsel. The district court refused to grant a continuance or to set aside the plea and, in imposing sentence, departed from the plea agreement, citing Taylor's "lack of remorse." Taylor appeals.

Our jurisdiction is under K.S.A. 22-3601(b)(1) (imposition of a life sentence).

Taylor raises four issues: (1) Was his Sixth Amendment right to counsel violated because the district court failed to (a) properly inquire into his dispute with counsel and (b) grant a continuance; (2) did the district court abuse its discretion by refusing to allow him to withdraw his guilty plea; (3) did the district court act with prejudice, bias, or vindictiveness by imposing consecutive sentences; and (4) did the State breach the plea agreement with Taylor?

Under the facts here we hold that Taylor is entitled to a meaningful hearing on his K.S.A. 1998 Supp. 22-3210(d) motion to with-

draw his plea. We vacate his sentence and remand. Because of the remand we need not reach issues (3) and (4). Our remand moots the continuance aspect of issue (1).

## FACTS

This case arises out of the death of 60-year-old Cletus Schumacher. Schumacher was strangled in his apartment. The police presumed Schumacher was killed during a robbery, as his television and microwave were missing. Taylor was apprehended after police learned that he sold the television and microwave the morning of Schumacher's death.

Taylor was originally charged with felony murder, aggravated burglary, and misdemeanor theft. The evidence against Taylor was circumstantial. The judge at the preliminary hearing identified as a significant question whether there was sufficient evidence to bind Taylor over on the aggravated burglary and, therefore, the felony-murder charges.

During the year leading up to trial, the possibility of a plea bargain was never discussed with Taylor by his attorney, Susan Martin, of the public defender's office. The night before trial, according to Taylor, his attorney advised him that she could win his case and he should not accept a 10-year sentence as part of a plea agreement. The next morning her advice changed. She told Taylor a plea agreement had been offered and he should accept it. Martin did not contradict Taylor's version of these events. Taylor had somewhere between 20 minutes and 1½ hours to make the decision. Taylor decided to accept the offer and entered a *Brady* plea. We refer to a *Brady* plea rather than an *Alford* plea because the *Brady* label was used below. The State reduced the felony-murder charge to second-degree murder. The State also agreed to recommend the median guidelines sentence for the aggravated burglary and theft charges, with all three sentences to run concurrently. Taylor signed a five-page printed form plea agreement, acknowledging that it was his decision alone to accept the agreement and that he did so without duress.

After Taylor's counsel told the judge that Taylor would be entering a *Brady* plea, the district judge asked if Taylor had read and

discussed the agreement with his lawyer. Taylor responded that he had and that he had no questions about the agreement.

The district judge then informed Taylor of his rights. Continuing, the district judge said:

"[F]irst of all, I'm going to discuss a little bit about a Brady plea. Well, first of all, do you understand all those rights that I just discussed with you?

"THE DEFENDANT: Yes, I do.

"THE COURT: Now, I'm going to go over a Brady plea first because that is a little bit different than a guilty plea. A Brady plea is a guilty plea, but it's a guilty—without actually an admission of guilt or actually—let me start back over. A Brady plea is a guilty plea, but it's a guilty plea that is made in exchange or in consideration for the plea agreement, for the plea negotiations.

"By entering a Brady plea, what you're telling me is that you acknowledge that you do have a defense to these charges. Your defense could be 'I didn't do it.' It could be a technical or legal defense. It could be any number of things, but it is a defense that could substantially improve your chances of prevailing at some kind of a trial. However, the Brady plea is entered because you acknowledge that by going to trial, there may be some risks to you.

"And of course, you are charged in this particular case with felony murder, which is also an off-grid person felony, and it carries some very heavy sentencing considerations along with it. So what you're saying by entering a Brady plea is that you recognize that you have a defense, but you also recognize that there are a lot of risks that could attach to you if you go to trial, and you feel that the plea negotiations are so beneficial that you would like to take advantage of them, that you would rather not endure that risk.

"Do you understand what a Brady plea is?

"THE DEFENDANT: Yes, ma'am, I do."

Taylor was informed of the sentence options available to the judge. He acknowledged that he understood the judge was not bound by the plea agreement.

Inquiry into Taylor's relationship with his counsel followed:

"THE COURT: I note that you do appear here and have throughout the course of these hearings with Ms. Martin. Have you had an appropriate amount of time to discuss this case with her?

"THE DEFENDANT: Yeah.

"THE COURT: And have you been satisfied with her services as your lawyer?

"THE DEFENDANT: Yeah.

"THE COURT: Have you been satisfied with the way the courts have treated you?

"THE DEFENDANT: Yeah.

"THE COURT: Do you have any questions that you would like to ask me now about any of the rights that I've explained to you?

"THE DEFENDANT: No.

"THE COURT: Is it your choice at this time to give up those rights and plead guilty pursuant to the Brady decision and pursuant to the plea negotiations?

"THE DEFENDANT: Yes, it is.

"THE COURT: I find that Mr. Taylor understands the charges against him, that he understands his rights and the consequences of pleading guilty. I further find that Mr. Taylor has knowingly, intelligently, freely, and voluntarily waived his rights."

Approximately 1 week after Taylor entered his guilty plea, he wrote a letter to Martin expressing his dissatisfaction with the plea. Martin did not file a motion to withdraw Taylor's plea until the day of sentencing, 3 weeks later. The motion to withdraw the guilty plea recited that Taylor "was not fully cognizant of his rights, that he was rushed into his decision and he could not have given a voluntary full waiver of those rights." Before sentencing, Taylor told Martin he had spoken with his family and they agreed he should withdraw his plea and hire a new lawyer. In fact, Taylor said that he had already contacted a few attorneys. Taylor asked Martin to request a continuance so he could secure the services of a new attorney. Martin did so. The district court denied his request, stating, "Thank you. That will be overruled. *Mr. Taylor can represent himself if he wants to today,* but this case has been scheduled for sentencing since September 29th at—that was the date on which Mr. Taylor entered this plea." The district court then refused to allow Taylor to withdraw his plea. After denial of the request for continuance and motion to withdraw his plea, Taylor addressed the court at length. He said in part:

"I feel that I've been treated real unfair in this case because I'm poor, for one, that I was not able to obtain good counsel to represent me in a trial. I'd like to state to the victim's family that I'm sorry that somebody in your family did get hurt. And I know as much as these people over here want you to believe I am the person who did this crime, I did not do this crime. I am innocent of these charges, and I did not do this crime. And one of the reasons why I'm saying this today is because I'm an innocent man, and I'm going—I had to take a plea to a ten-year sentence for something I didn't do. . . .

"And the bottom line is—it comes down to is I did not have the money to obtain good legal counsel to represent me in a trial. I never entered into plea

negotiations with my lawyer. My lawyer talked to me one day before sentence—before the trial was going to start. We talked about a plea, she talked to me, Well, if they offer five years, I'm going to advise you to take this plea. I said, No, I ain't taking a plea for something I didn't do. Then if it's 10 to 15, we're going to trial. My lawyer states to me, Mr. Taylor, this is a case that I should win as a lawyer. I should win this case. Prepare to go to trial tomorrow, Mr. Taylor. So I'm thinking these people are finally going to figure out that I'm not the person that did this crime. And I show up here the next day, my lawyer's in this room saying, John, they come with a ten-year plea, I'm advising you to take this plea, when one day she's saying she can win, the next day she's saying I'm advising you to take a plea. . . .

". . . I was put in a situation where I see a lawyer standing in front of me that one day saying I should win this case, the next day she's got cold feet and doesn't want to go to a trial, she's saying, John, take the plea. So pretty much any person in their right mind can see that this lawyer wasn't—never intended to win this case for me from the get-go. I can see it, and my whole family and everybody around me that has anything to do with this case could see that this lawyer right here was never intending to win this case for me.

"So, here I am, I'm stuck. I'm supposed to gamble 35 years of my life on the line with this lawyer that never intended to win the case? I couldn't do that, so I have to take a plea. I want to withdraw that plea so I can—my family can hire me a real lawyer so I can fight this case because I can win this case because I did not do this crime. And I'm standing here before you today to give me the opportunity for my family to hire me a real lawyer so I can fight this case. I'm giving you the opportunity to give me 40 years in prison instead of 10. I did not do this crime. And I stand here before you today and tell you I did not do this crime. The only reason I took a plea is because I couldn't gamble 35 years of my life on this woman right here.

"THE COURT: Please take your finger away from Ms. Martin, Mr. Taylor.

"THE DEFENDANT: Because she has cold feet. And that's my reasoning behind this, you know. I did not do this crime. And that's why I want to withdraw my plea."

The district judge proceeded to sentencing. She said that although she had intended to follow the plea agreement, she was departing from it because of Taylor's "lack of remorse." Consecutive, instead of concurrent, sentences were imposed.

## DISCUSSION

Taylor complains that his Sixth Amendment right to counsel was violated when the district judge summarily denied his request for a continuance so that he could secure new counsel.

At the beginning of the sentencing hearing, Martin informed the court that Taylor said he had spoken with "a couple of attorneys" and that his family was interested in trying to secure their services for Taylor's continued representation.

The judge did not inquire as to the reasons for Taylor's request for time to secure alternate counsel and overruled the request, stating that Taylor could represent himself if he wanted to. Martin made no further arguments on Taylor's behalf.

Taylor argues that the district court's summary denial of his request and statement that he could represent himself implied that substitute counsel could not be obtained. Further, Taylor states this implication is untrue, as substitute counsel may be appointed under certain circumstances, citing *State v. Hegwood,* 256 Kan. 901, 903-04, 888 P.2d 856 (1995) (substitute counsel is available upon a showing of "justifiable dissatisfaction").

The record shows that Taylor did not ask the court to appoint new counsel. Taylor's intent was to independently hire a new attorney.

According to Taylor, the record shows a basis for a finding of "justifiable dissatisfaction." Although the court did not ask about Taylor's representation, Taylor took the opportunity, offered after his continuance request and his motion to withdraw his plea were denied, to address the court. He made lengthy complaints about his representation and stated he was rushed into a decision to accept the plea. Primarily, Taylor complains that he took the plea because he concluded Martin was unwilling or unprepared to try his case on the day of trial. Taylor bases his conclusion on the conflicting advice given by Martin. The night before trial, Martin told Taylor not to take any plea offer, including a 10-year sentence, because she would win his case. However, the next morning, Martin advised Taylor a 10-year sentence had been offered and he should take it. From this, Taylor concluded that Martin had "cold feet" and "never intended to win this case for [him] from the get-go." Martin made no denials of Taylor's statements to the court. Taylor's statements placed Martin in a difficult position. A conflict with advocating Taylor's best interest may have surfaced at this point. As Taylor's counsel, she could not contradict her client's

story in open court and continue to represent his best interests. Martin, in support of Taylor's motion to withdraw his plea, argued:

"Mr. Taylor, shortly after entering the plea, probably within the next week or so, wrote me a letter and indicated to me that he had grave concerns about the fact that he entered into this plea, the plea that he had done. And in meeting with him, his concerns were to such an extent that he believes the time constraints that was placed on him on the morning of trial and the serious nature of the charges that he was faced with basically deprived him of his ability to be very rational when he sat down and contemplated taking this plea. On the basis of that, the fact that really—and throughout the proceedings, preparing for jury trial, we never really discussed entering into a plea. The Sunday night before jury trial, Mr. Taylor contemplated that. I communicated his concerns to the district attorney, and an offer was made to us the morning of trial, which I communicated to Mr. Taylor. He was able to consult with a family member and also with his girlfriend, and he chose to enter the plea. However, it's his belief right now that if he were to be able to do it all over again, he would have not given up his rights. That the constraints and the necessity to get the case moving were such that he doesn't feel like he voluntarily entered into the plea. And at this time he'd ask the Court, believing that good cause is shown, to allow him to withdraw his plea and proceed to jury trial."

Martin did admit that the possibility of a guilty plea was never discussed until the night before trial. The judge's solution to Taylor's request for a continuance to obtain a new attorney was for Taylor to represent himself if he wished.

Ordinarily, complaints such as Taylor's would not merit a reversal. There is not enough in the record to show "justifiable dissatisfaction" with Martin as defense counsel. However, whether there was a showing of "justifiable dissatisfaction" is really not the question here because Taylor did not ask the court to appoint new counsel. Taylor represented that he had consulted with outside attorneys and his family was attempting to secure their services. The decision to deny the continuance to secure conflict-free counsel blends with the decision to deny the motion to withdraw Taylor's guilty plea. Both lie within the sound discretion of the district court. A ruling will not be disturbed on appeal absent a showing of abuse of discretion. *State v. Hill*, 247 Kan. 377, Syl. ¶ 2, 799 P.2d 997 (1990). The real question is whether the lack of a meaningful hearing on Taylor's motion to withdraw his guilty plea under

K.S.A. 1998 Supp. 22-3210(d) was an abuse of discretion. We believe that it was.

The problem here is that the district court never allowed Taylor an opportunity to explain his perception of the alleged conflict before denying the request for new counsel.

The implication that substitute counsel is not necessary at a hearing to withdraw a plea, and at sentencing, without further inquiry, is incorrect. There is "no constitutional right to counsel at each and every post-conviction proceeding or motion." *State v. Nunn*, 247 Kan. 576, 583, 802 P.2d 547 (1990). However, if a hearing is held and the State is represented, the defendant should be represented by conflict-free counsel unless the defendant waives the right to counsel. See *State v. Pierce*, 246 Kan. 183, 199, 787 P.2d 1189 (1990).

It is the task of the district judge to insure that a defendant's Sixth Amendment right to counsel is honored. *State v. Cromwell*, 253 Kan. 495, 507, 856 P.2d 1299 (1993).

The district judge failed to make any inquiry as to the problems between Taylor and Martin. Were they imagined or real? The record contains no inquiry from the bench regarding the adequacy of Taylor's representation.

While silent on the facts surrounding Taylor's requests and complaints, the record does show the district judge's concern to go on to sentencing. Taylor's complaints about his counsel may have been insufficient to warrant a continuance, but the lack of information in the record precludes us from making such a finding. Taylor was not asking the court to appoint substitute counsel, only the opportunity to secure alternate retained counsel. There is nothing in the record suggesting Taylor's request was unreasonable or that he had delayed the court previously. The district judge's denial of Taylor's continuance request was swift. The continuance denial alone does not qualify as abuse of discretion. However, when linked with the district judge's suggestion that Taylor could represent himself, which paralleled the judge's failure to ask about the alleged problems with Martin, creates concern. Our concern is heightened by the absence of a meaningful hearing on the plea withdrawal motion and the possibility that the standard referenced was "grave con-

cerns" and not the mandated "good cause" under K.S.A. 1998 Supp. 22-3210(d).

Taylor raises no arguments concerning the statutory mandates associated with the court's acceptance of a plea agreement. Taylor does not claim to have been misinformed by Martin but complained she was not ready to go to trial. Under the circumstances, argues Taylor, his plea was not the product of a rational, voluntary decision to give up his rights.

A motion to withdraw a plea before sentencing should allege: (1) the defendant is not guilty of the offense charged, (2) the plea resulted from fraud, duress, mutual mistake, or lack of understanding of the charge, and (3) the effect of the plea. *State v. Johnson,* 258 Kan. 607, 610-11, 907 P.2d 140 (1995). Taylor's motion failed to allege his innocence. However, Taylor's professed innocence may have been the reason for his *Brady* plea. (The district judge told Taylor that his defense could be "I didn't do it" when she instructed him on the *Brady* plea.) The term *"Brady* plea" was continuously referred to by the judge before and during the sentencing hearing.

In denying Taylor's motion to withdraw his plea, the district judge stated:

"The motion is overruled. I did this plea myself, so I'm not having to review what another judge has done in that regard, and I remember this plea very well.

"First of all, when I arrived in the morning, I was immediately informed by the attorneys that there were plea negotiations going on. I bent over backwards, which is generally not my practice. My practice is generally on the morning of trial to say let's just go to trial rather than permit the conversations to go on. However, I did bend over backwards to accommodate Mr. Taylor and his attorney in their efforts to discuss the viability of entering into a plea in this case. As Ms. Ritthaler [the prosecutor] has stated, I even allowed Mr. Taylor to use the phones in my chambers so that he could discuss his decision to plead with other people. . . .

"Mr. Taylor, you may have grave concerns about having entered into this plea, but I can assure you that in my—I will find that you are—I accommodated you to great lengths, that you had ample time. . . . Second thoughts do not rise *to the level of grave concerns* to enter into a plea, and I am overruling that motion." (Emphasis added.)

If the district court relied on a showing of "grave concerns," it relied on the incorrect legal standard for deciding a motion to with-

draw a plea before sentencing. K.S.A. 1998 Supp. 22-3210(d) provides: "A plea of guilty or nolo contendere, *for good cause shown* and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." (Emphasis added.) Thus, Taylor was required to show "good cause," not "grave concerns." The problem is that no meaningful hearing under K.S.A. 1998 Supp. 22-3210(d) was held. Similarly, without the assistance of conflict-free counsel, Taylor was given no meaningful opportunity to show "good cause." Further, no finding was made that Taylor failed to show good cause.

In evaluating a motion to withdraw a plea, the district court should consider whether: (1) *the defendant was represented by competent counsel*, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made. *Hill*, 247 Kan. at 385. Here, the judge considered only whether Taylor had sufficient time to make a decision. She concluded he had sufficient time. She did not abuse her discretion in that respect. However, she failed to consider whether Taylor was represented by competent counsel, although that was the thrust of Taylor's complaint.

Was it an abuse of discretion for the district judge to deny Taylor's motion without making the proper inquiry under 22-3210(d)? We hold that it was. Perhaps Taylor's representation was competent. Perhaps Taylor's problem is "buyer's remorse." Perhaps no good cause showing will be made and the proper disposition will be a denial of Taylor's motion to withdraw his plea. Our holding here is a narrow one. We are not eroding traditional deference to the exercise of trial court discretion. These questions await answers developed at a meaningful hearing under *Hill* and K.S.A. 1998 Supp. 22-3210(d).

Although our past cases have not presented the factual format we face here, we have addressed similar issues. In *State v. Richardson*, 256 Kan. 69, 82, 883 P.2d 1107 (1994), we found no abuse of discretion in the district court's denial of Richardson's motion to permit her counsel to withdraw. Richardson's attorney alerted the judge to a deterioration in the attorney-client relationship. A record of the conflict was made. Richardson was given the oppor-

tunity to express her dissatisfaction with her attorney. The judge asked Richardson if she had retained an attorney. She had not. The judge opined that Richardson had been "well represented." 256 Kan. at 81. Richardson's first appointed counsel had been removed because of her dissatisfaction. Richardson contended on appeal that the district court's inquiry into her dissatisfaction with her second attorney was inadequate. We disagreed. The judge in *Richardson* found her concerns baseless and stated why. The judge asked Richardson if she would like an additional opportunity to speak with her attorney. She accepted the offer. Attorney-client discussions were held in a private room.

The Court of Appeals observed that it is an abuse of discretion where a trial judge, after becoming aware of a potential conflict between an attorney and client, fails to inquire further. *State v. Mosley*, 25 Kan. App. 2d 519; 965 P.2d 848, *rev. denied* 266 Kan. 1113 (1998).

In *State v. Williams*, 259 Kan 432, 913 P.2d 587 (1996), we reviewed Williams' pro se motion to withdraw his plea of nolo contendere before sentencing on the ground that his attorneys coerced him to enter into the plea agreement against his will. Williams was represented in the plea agreement by the public defender. After filing his motion to withdraw his plea, new counsel was appointed. New counsel filed an amended motion to withdraw the plea. Applying an abuse of discretion standard, we affirmed the trial court's denial of the motion. 259 Kan. at 439. The conflict issue here did not arise in *Williams* because new counsel was appointed for Williams after he filed his pro se motion to withdraw his plea.

In *State v. Reed*, 248 Kan. 506, 809 P.2d 553 (1991), we considered Reed's motion to withdraw his nolo contendere plea before sentencing. We found no abuse of discretion in the district court's denial of the motion. 248 Kan. at 513. The possibility of a conflict between defendant and counsel was absent in *Reed*. In fact, Reed told the court, " 'My counsel has been excellent.' " 248 Kan. at 510.

*State v. Johnson*, 258 Kan. 607, 907 P.2d 140 (1995), and *State v. Larry*, 252 Kan. 92, 843 P.2d 198 (1992), are also of interest. We affirmed denials of motions to withdraw pleas filed before sen-

tencing in both cases. *Johnson* involved a hearing on the motion. Johnson's counsel testified. The district court, in denying the motion for insufficient cause, set out its reasoning. 258 Kan. at 610. The motion in *Larry* was based on the trial judge's misstatements of the law, the judge's refusal to allow Larry's witnesses to testify, and the insistence of counsel that Larry would be found guilty. No conflict with counsel was asserted. We held the trial court's rulings were correct. 252 Kan. at 97.

Although the facts here are different from the facts in *Wood v. Georgia*, 450 U.S. 261, 272, 67 L. Ed. 2d 220, 101 S. Ct. 1097 (1981), the conflict analysis in *Wood* is helpful. The petitioners in *Wood* were represented by their employer's lawyer, "who may not have pursued their interests single-mindedly." 450 U.S. at 271-72. Taylor asserts the internal conflict of his attorney's loyalty, not the multiple representation conflict as in *Wood*. We conclude, however, that the instruction in *Wood* to trial courts sensing the possibility of a conflict of interest applies here. Where a trial court becomes aware of a possible conflict of interest between an attorney and a defendant charged with a felony, the court has a duty to inquire further. *Wood*, 450 U.S. at 272.

Our final observation addresses a possible confusion here between a *Brady* plea and an *Alford* plea. The Supreme Court, in *Brady*, held that a guilty plea otherwise voluntarily and intelligently made with competent counsel is not invalid because the plea is motivated by a desire to avoid the death penalty or to obtain a lesser sentence. 397 U.S. 742. *Alford*, 400 U.S. 25, held an accused may plead guilty without admitting the acts of the crime or even protesting innocence if the defendant intelligently concludes defendant's interest so requires and the record strongly evidences guilt. We said in *State v. Johnson*, 255 Kan. 156, 157, 872 P.2d 247 (1994), that an *Alford* plea was a "plea of guilty to the charge without admitting to the commission of the offense." See *Reed*, 248 Kan. at 510-11, for an *Alford* plea discussion. Taylor's position is that he entered his plea under duress even though he was innocent. He has not admitted commission of the offenses.

We reverse, vacate Taylor's sentence, and remand for a hearing with new counsel representing Taylor on his 22-3210(d) motion to

withdraw his plea. The case is to be reassigned to another judge who is not from the 18th judicial district.

ABBOTT, J., dissenting: Taylor tendered a plea the morning of the trial. A jury panel was present, the witnesses were present, and all the attorneys were prepared for trial. The trial judge asked all of the necessary questions of the accused, and there is no question in my mind, based on the record taken of the plea, that it was the free, voluntary, and knowing plea of Taylor. Taylor was not only counseled by his attorney, but was allowed the use of the judge's phone for up to an hour to confer with his family and girlfriend. He specifically stated his satisfaction with counsel.

Now Taylor says his counsel first told him that she could win his case, but at some point told him that if he could get a 5-year sentence he should take it. The morning of the trial his counsel advised him to accept a plea that would lead to a 10-year sentence. Taylor makes no other meaningful allegation and, assuming what Taylor says is found to be true by the judge hearing this matter on remand, it would not be sufficient to overcome the record made when the plea was taken. Thus, it appears to me the majority is allowing Taylor to go on a fishing expedition.

I am also concerned that the majority is, in essence, telling the trial court that no matter what is in the record from the plea hearing, if Taylor claims that he really did not want to plead guilty, the trial court must appoint an attorney, bring Taylor back from prison, and hold a hearing. Taylor is and should be bound by the plea he entered when his only complaint is that he made a bad bargain.

Based on the record before us, Taylor is not entitled to a hearing or to have a lawyer appointed. I would affirm the trial court on this issue and consider the remaining issues.

MCFARLAND, C.J., joins the foregoing dissenting opinion.