(98 P.3d 656)
No. 91,381

STATE OF KANSAS, *Appellee*, v. JACKIE BRENT DAVIS, *Appellant*.

Opinion filed October 8, 2004.

*Libby K. Snider*, assistant appellate defender, for appellant.

*Ty Kaufman*, county attorney, and *Phill Kline*, attorney general, for appellee.

Before HILL, P.J., GREEN and MALONE, JJ.

MALONE, J.: Jackie Brent Davis appeals the district court's denial of his motion to withdraw his guilty plea for aggravated robbery. Davis claims that he was denied his right to a meaningful hearing on his motion to withdraw plea because he was not represented by conflict-free counsel. We affirm.

On January 9, 2003, Davis was charged with one count of aggravated robbery under K.S.A. 21-3427, a severity level 3 person felony. He was accused of robbing the Roxbury State Bank in Roxbury, Kansas. Dexter Eggers of the Salina Public Defender's office

was appointed to represent Davis. A preliminary hearing was held on February 5, 2003, and Davis was bound over for arraignment. At the February 17, 2003, arraignment, Davis entered a not guilty plea and the case was scheduled for jury trial.

On May 21, 2003, a plea agreement was filed where Davis agreed to plead guilty or nolo contendere in exchange for the State furnishing a written memorandum that the United States Attorney would not file bank robbery charges against Davis in federal court. Davis signed the plea agreement, which also provided that there was no agreement on sentencing.

On May 21, 2003, Davis entered a guilty plea in accordance with the plea agreement. During the plea hearing, the district court reviewed the terms of the plea agreement and both parties agreed to its conditions. The district court informed Davis of the charge, the maximum penalties which could be imposed, and his rights under the Kansas laws and federal constitution. The district court also inquired whether Davis was freely and voluntarily entering the plea. Specifically, the district court asked Davis if anyone threatened him to enter the plea, and Davis denied receiving any threats. The district court asked Davis if he was satisfied with his legal representation, and Davis responded affirmatively. The district court found that Davis understood the consequences of the plea, that the plea was voluntarily made, and that a factual basis was established, and the court accepted the plea. Davis subsequently filed a motion for departure sentence.

Before sentencing, Davis sent a letter to the judge dated June 30, 2003, which was filed with the court on July 10, 2003. In the letter, Davis said that Eggers had threatened Davis and his family to push for a plea, that Eggers refused to give Davis documents pertaining to his case, and that Eggers told Davis that he was too busy to try Davis' case. Davis wrote: "In closing, I feel I have been misrepresented and I am requesting a new attorney to be appointed to me on these grounds."

Davis' sentencing was held on July 21, 2003. Mark Dinkel of the Salina Public Defender's office appeared at the hearing to represent Davis at sentencing. Dinkel informed the district court that Davis wanted to withdraw his plea. Dinkel also informed the dis-

trict court that he would have a conflict with a plea withdrawal because his office negotiated the plea.

At this point, the district court reviewed the journal entry of Davis' plea hearing including the various rights explained to Davis at the time of the plea. The district court then addressed Davis personally, and the following exchange took place:

"THE COURT: What is it in this case today that you're telling the Court forms the basis for your changing that plea?

"DEFENDANT: Well, Your Honor, in that, in this where I feel I've been misrepresented by Dexter, he's made numerous threats to me and my family pertaining to this case.

"THE COURT: You're speaking of your attorney at the time?

"DEFENDANT: The past attorney, yes, sir.

"THE COURT: Did you advise the Court of that on the date you were entering this plea? That would be back on May the 21st, 2003; did you tell the Court in open court on the record that—

"DEFENDANT: No, sir.

"THE COURT: —this had happened? Why didn't you do that?

"DEFENDANT: I, I'm not real smart about all this, you know.

"THE COURT: Well, but you understood that day what the Court was asking you, didn't you?

"DEFENDANT: Not really.

"THE COURT: You didn't understand any of these things the Court asked you about that I've just gone through?

"DEFENDANT: Not everything, sir.

"THE COURT: What?

"DEFENDANT: Not everything, sir.

"THE COURT: What, what didn't you understand?

"DEFENDANT: I didn't understand some of them words he was using because I had to ask my attorney what I should say, which was Dexter, and he just told me what to say.

"THE COURT: Do you know what you did that day?

"DEFENDANT: No, sir.

"THE COURT: You don't know that you entered a plea.

"DEFENDANT: No, sir. I haven't gotten no paperwork pertaining to my case.

"THE COURT: But you were here, were you not?

"DEFENDANT: Yes, sir.

"THE COURT: Do you understand what you're doing here today?

"DEFENDANT: Yes, sir.

"THE COURT: Do you understand today you're asking to withdraw that plea?

"DEFENDANT: Yes, sir.

"THE COURT: You understand what that means?

"DEFENDANT: Yes, sir.

"THE COURT: But you're telling the Court you didn't understand what it meant on the 20th of May?

"DEFENDANT: No, sir.

"THE COURT: What is the difference?

"DEFENDANT: Well, that he was just, it just all went so fast I didn't know what was going on.

"THE COURT: What?

"DEFENDANT: It all went so fast I didn't know what was going on. I was asking Dexter Eggers what to say. Judge asked me questions, the questions about—

"THE COURT: This is the same attorney you now state was threatening you?

"DEFENDANT: Yes, sir.

"THE COURT: Instead of asking him questions why didn't you tell the Court he was threatening you?

"DEFENDANT: *I have no comment, Your Honor.*

"THE COURT: Do you understand that part of the basis for your proceeding in this Court is that the United States Attorney filed a memo that he would not pursue federal bank robbery charges against you?

"DEFENDANT: Sir, that was already, already stated in the past. On January 30th, United States Attorney will not accept your case for federal prosecution. Your case, therefore, will proceed through McPherson County District Court." (Emphasis added.)

Following this exchange, the district court stated that "[Davis] was totally aware of those proceedings [the plea hearing] and understood what he was doing. The Court simply does not feel it appropriate to permit him today to withdraw his plea of guilty. The Court will deny that request and order that this matter proceed."

Dinkel said he could represent Davis for the remainder of the hearing, and the district court proceeded with sentencing. Davis received a standard sentence under the sentencing guidelines of 66 months, with a postrelease supervision term of 36 months. Davis' motion for downward departure was denied. Davis timely appeals.

Davis claims that the district court erred in denying his motion to withdraw his plea. Specifically, Davis argues that he did not have the opportunity to establish the truth of his claims because the district court failed to appoint conflict-free counsel during the hearing on his motion to withdraw plea.

"The decision to deny a motion to withdraw a plea rests within the sound discretion of the trial court and such decision will not be set aside on appeal absent a showing of abuse of discretion. [Citations omitted.]" *State v. Williams*, 275 Kan. 284, 287, 64 P.3d 353 (2003). "Discretion is abused only when no reasonable person would take the view adopted by the district court. The defendant bears the burden of establishing such an abuse of discretion. [Citation omitted.]" *State v. Sanchez-Cazares*, 276 Kan. 451, 454, 78 P.3d 55 (2003).

According to Kansas law, "[a] plea of guilty or *nolo contendere*, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." K.S.A. 2003 Supp. 22-3210(d).

Davis argues that under *State v. Taylor*, 266 Kan. 967, Syl. ¶ 2, 975 P.2d 1196 (1999), the lack of a meaningful hearing on a motion to withdraw a guilty plea constitutes an abuse of discretion. In *Taylor*, the defendant informed his attorney that he was dissatisfied with his plea, but the attorney did not file a motion to withdraw the plea until the day of sentencing. The defendant also requested a continuance in order to secure the services of a new attorney and informed the court of several complaints about his appointed attorney. The district court denied the motion to withdraw plea, stating, " 'Thank you. That will be overruled. Mr. Taylor can represent himself if he wants to today, but this case has been scheduled for sentencing since September 29th at—that was the date on which Mr. Taylor entered this plea.' " 266 Kan. at 971. The district court then proceeded to sentence the defendant to consecutive prison terms even though the plea negotiations called for concurrent terms.

On appeal, the Kansas Supreme Court vacated Taylor's sentence and remanded the case for a hearing on Taylor's motion to withdraw his plea. 266 Kan. at 979-80. The court held that where a district court becomes aware of a possible conflict of interest between an attorney and a defendant charged with a felony, the district court has a duty to inquire further. 266 Kan. 967, Syl. ¶ 3. The court noted:

"The problem here is that the district court never allowed Taylor an opportunity to explain his perception of the alleged conflict before denying the request for new counsel.

. . . .

"The district judge failed to make any inquiry as to the problems between Taylor and [his counsel]. Were they imagined or real? The record contains no inquiry from the bench regarding the adequacy of Taylor's representation." 266 Kan. at 975.

A distinguishing fact of *Taylor* is that the district court did not give the defendant the opportunity to explain the alleged conflict with his attorney prior to denying the motion to withdraw plea. Here, the district court addressed Davis personally and asked several questions about Davis' alleged conflict with his counsel and why he wanted to withdraw his plea. Another distinguishing fact of *Taylor* is that the district court proceeded with sentencing with the defendant representing himself. Here, after the district court denied Davis' motion to withdraw his plea, Dinkel resumed representing Davis for the remainder of the sentencing hearing.

Davis cites no authority supporting his contention that the district court could not address Davis personally regarding his request for new counsel. In fact, this procedure has been endorsed by the Kansas Supreme Court in *State v. Richardson*, 256 Kan. 69, 81-82, 883 P.2d 1107 (1994). In *Richardson*, the defendant raised a conflict with her appointed counsel at sentencing. The district court asked the defendant to explain why she was unsatisfied with counsel and found the dissatisfaction was without merit. Once the request to substitute counsel was denied, the district court gave additional time for the attorney and client to confer before proceeding. On appeal, the Supreme Court found that there was no abuse of discretion in failing to appoint substitute counsel. 256 Kan. at 82. See also *State v. Jenkins*, 257 Kan. 1074, 1084, 898 P.2d 1121 (1995) ("[W]here the trial court is advised of the possibility of a conflict by either the defendant or the State, the court is required to initiate an inquiry to ensure that the defendant's Sixth Amendment right to counsel is not violated.").

Unlike in *Taylor*, the district court in this case made an inquiry into the alleged conflict between Davis and his counsel. Davis told

the district court that his attorney made numerous threats to Davis and his family. When asked why he did not tell the court about the threats at the time of the plea, Davis responded, "I have no comment, Your Honor." If Davis had provided a satisfactory response to the district court's inquiry, perhaps it would have become appropriate for the district court to suspend the hearing, appoint substitute counsel for Davis, and schedule a separate hearing on Davis' motion to withdraw his plea. Under the given circumstances, however, Davis' constitutional right to counsel was not violated by the manner in which the district court proceeded.

The district court's inquiry into Davis' conflict with his counsel and his reasons to withdraw his plea was adequate. The district court asked Davis several questions about whether he understood the nature and consequences of his plea. Even though the district court did not directly ask Davis about the nature of the threats from his counsel, the district court did ask Davis twice why he did not inform the court during the plea hearing of the alleged threats. Davis chose not to provide any specific information or explanation to the court.

We conclude that the district court conducted a meaningful inquiry concerning Davis' alleged conflicts with his counsel and his reasons to withdraw his plea. It was proper for the district court to personally address Davis to consider his motion to withdraw his plea once a conflict of interest with counsel was alleged, and Davis' constitutional right to counsel was not violated. Based upon Davis' responses to the district court's inquiry, the district court did not abuse its discretion in denying Davis' motion to withdraw his plea.

Affirmed.