NOT DESIGNATED FOR PUBLICATION

No. 122,285

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROGER ORAL SMITH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Butler District Court; JANETTE L. SATTERFIELD, judge. Opinion filed July 2, 2021. Reversed, sentence vacated, and case remanded with directions.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Cheryl M. Pierce*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., BUSER and CLINE, JJ.

PER CURIAM: Roger Smith pleaded guilty to voluntary manslaughter. A few weeks before his sentencing hearing, he filed a pro se motion to withdraw his plea, alleging his attorney had not discussed potential defenses with him. The court addressed the motion at a hearing, where Smith's attorney—purportedly arguing on Smith's behalf—observed that Smith likely had not shown good cause to withdraw his plea. The attorney also offered statements contradicting Smith's assertions. Smith, when addressing the court, disagreed with his attorney's statements and also indicated that his attorney had not informed him of his plea's effect on a pending motion to dismiss. The court denied Smith's plea-withdrawal motion and sentenced him.

1

Smith appeals, arguing that his motion and his attorney's comments during the hearing showed he had a conflict of interest with his attorney. Given this conflict, Smith asserts that the court erred when it proceeded to consider the merits of his motion without appointing new counsel to represent him. Smith also asserts that the district court's ruling on the merits of his motion was not supported by the record and that the court committed additional errors at sentencing.

After carefully reviewing the record, we agree with Smith that the court abused its discretion when it considered the merits of his plea-withdrawal motion without first appointing conflict-free counsel to represent him. We therefore reverse the court's ruling on Smith's motion, vacate his sentence, and remand for a new hearing where he will be represented by different counsel. In light of this disposition, we do not reach the other two claims raised in Smith's appeal.

FACTUAL AND PROCEDURAL HISTORY

On August 1, 2016, officers from the Andover Police Department received a call about a possible suicide at an apartment complex. Inside the apartment, police found Sandra Berry lying on the bed, her neck cut. Because Berry was the only person in the apartment, officers began searching for the person who called 911. In a nearby apartment, they found Roger Smith—who lived with Berry—with a cut and bandage on his hand. Smith, who smelled of alcohol, explained that Berry returned home and began arguing with him, accusing him of seeing another woman. Eventually, Berry took a kitchen knife and tried to cut Smith, injuring his hand. She then turned the knife on herself, and Smith called the police. Berry died from her injury, and a toxicology report showed she had also been drinking. The State eventually charged Smith with second-degree murder for Berry's death.

2

In October 2018, while the case against him was pending, Smith filed two pro se motions. Both motions concerned an incident where jail staff opened and forwarded to the prosecutor a letter Smith wrote to his attorney. In one motion, labeled "Pro Se Motion to Appoint New Counsel," Smith alleged that a conflict of interest had arisen with his attorney and cited *State v. Brown*, 300 Kan. 565, 331 P.3d 797 (2014), and *State v. Mitchell*, No. 108,372, 2013 WL 4730227 (Kan. App. 2013) (unpublished opinion), both of which reversed for a new hearing when a person's attorney took positions adverse to the client's interests. Smith's second motion sought the removal of the prosecutor and others who had been involved in the incident, as well as the dismissal of his case. Smith also apparently filed a federal lawsuit against the prosecutor based on the incident.

The court granted Smith's motion for new counsel after a hearing, finding there had been a breakdown in communication and a lack of trust between Smith and his first attorney. The court then appointed new counsel, Steven Wagle, to represent Smith. The court did not explicitly rule on Smith's other pro se motion (seeking removal of the prosecutor and dismissal), noting Smith's new attorney would need to file a motion for a hearing to allow his claims to be further explained and discussed.

In March 2019, Smith filed a motion to remove his second attorney and appoint new counsel. Smith withdrew this motion after the court held a hearing, indicating he and Wagle had spoken and worked through his concerns.

In April 2019, Smith pleaded guilty to an amended charge of voluntary manslaughter. At the plea hearing, the court engaged in a lengthy and detailed discussion with Smith about the legal consequences of his plea and the rights he would be relinquishing if he pleaded guilty. Smith stated he understood that he would be giving up his right to a trial and appeal, and he indicated he still wished to enter his plea. Smith told the court that the reason he was pleading guilty was because he "killed Sandra Berry" after a "sudden . . . quarrel" or in the "heat of passion." There was no mention at the

hearing of Smith's unresolved pro se motion to dismiss. The court accepted Smith's plea and set the matter for sentencing two months later.

A little over a month after the plea hearing, and before sentencing, Smith filed a pro se motion to withdraw his plea. This motion again alleged a conflict of interest based on *Brown* and *Mitchell*. It listed several reasons Smith wished to withdraw his plea, largely based on questions he still had and defenses he would have raised at trial. His motion pointed out that despite his previous pro se motion after the incident with his mail, the prosecutor did not recuse herself. It also alleged that neither his attorney nor the prosecutor had discussed the defenses of voluntary intoxication or self-defense with him. Finally, despite Smith's statements at the plea hearing, the motion questioned whether there had been a sudden quarrel sufficient to support a conviction of voluntary manslaughter and indicated there were a number of witnesses who would be willing to testify in Smith's defense at trial. Wagle filed the motion on Smith's behalf with a typed motion (acting as a cover sheet to Smith's handwritten motion) that emphasized the motion was "a *pro se* Motion of the Defendant and not of his attorney."

The court addressed Smith's plea-withdrawal motion before sentencing. Wagle informed the court that he would argue the motion on Smith's behalf. Wagle then addressed the court as follows:

> "Though I would incorporate the motion that Mr. Smith made by reference, I would just state, Judge, that I received his motion of the 28th of May, and then filed this motion and attached it on May 31st.
> "Mr. Smith believes that he's being signaled—singled out because of his race. He believes that he has defenses to this case. And I believe that he has decided to change his mind about the plea, due to the defenses that he has, and due to the—the rights that he's giving up by entering this plea.
> "I understand that—of course, I was present when he—when he pled, and I don't know that he's asking the Court for anything the Court can grant because I don't think he's

4

met any of the statutory burdens to withdrawing his plea. Those being; voluntariness, competency of counsel, that he was misled or coerced.

"And that's all I have to say, Your Honor, other than, I would incorporate the 10 arguments that he made in his pro se motion by reference."

The court asked Wagle whether he had discussed the law relating to voluntary intoxication and self-defense with Smith before he entered his plea. Wagle responded, "I talked to him at length about things like that." He also indicated that he had discussed the fact that the State might amend the complaint, if the case were to go to trial, to charge first-degree murder.

The court proceeded to ask Smith if he had anything he would like to add. Addressing the court, Smith referenced his previous motion to dismiss, stating he told Wagle "several times" that he "would like to ask for all parties involved" in the issue with the jail mail "to be removed." The court informed Smith that all pending motions and defenses—including the motion to dismiss—were withdrawn when he decided to plead guilty. Smith responded, "Then why wasn't that explained to me before I withdrew that? If I had of known that, I would never have agreed to your [*sic*] plea agreement." The court reiterated that pending motions had to be withdrawn before the court could accept a plea. Again, Smith responded, "Well, that wasn't never . . . stated to me." He also noted that neither the prosecutor nor his attorney had discussed self-defense with him.

After this discussion, the court denied Smith's motion to withdraw his plea. Considering the defenses he waived and motions he withdrew through the plea process, the court explained, "I believe that all of these things were covered either with you and your attorney separately, or all of us in open court." The court then evaluated Smith's motion in light of the factors discussed in *State v. Edgar*, 281 Kan. 30, 127 P.3d 986 (2006), and determined he had not shown good cause to withdraw his plea.

5

Having denied Smith's plea-withdrawal motion, the court proceeded to sentencing. Relying on a presentence investigation report, the court found that Smith had a criminal history score of B, based in part on a 1987 felony conviction for a "terroristic threat." Consistent with the parties' plea agreement, the court granted Smith's motion for a downward durational departure and imposed a 186-month prison sentence.

Smith now appeals the denial of his plea-withdrawal motion. He argues that his assertions regarding his attorney's actions gave rise to a conflict of interest that was exacerbated by the attorney's statements at the hearing. For the reasons we explain in this opinion, we agree and reverse and remand for a new hearing on Smith's motion.

DISCUSSION

The Sixth Amendment of the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel. *State v. Pfannenstiel*, 302 Kan. 747, 758, 357 P.3d 877 (2015). This right carries with it "a correlative right to representation that is unimpaired by conflicts of interest or divided loyalties." 302 Kan. at 758.

The district court is charged with ensuring a defendant receives conflict-free representation. *State v. McDaniel*, 306 Kan. 595, 606, 395 P.3d 429 (2017). To carry out this obligation, a district court has an independent duty to inquire further when it either becomes aware or should have been aware of a potential conflict of interest. *State v. Prado*, 299 Kan. 1251, 1257, 329 P.3d 473 (2014); *State v. Sharkey*, 299 Kan. 87, Syl. ¶ 2, 322 P.3d 325 (2014). Practically speaking, this means that when a district court receives "an articulated statement of attorney dissatisfaction," the court must inquire into the alleged conflict. *McDaniel*, 306 Kan. at 606. The existence of this duty turns on the allegation of a conflict, not the particular relief sought by the defendant. *Pfannenstiel*, 302 Kan. at 760. Relevant here, when a defendant asserts alleged deficiencies in counsel's performance during plea negotiations as the basis for a motion to withdraw a plea, a

6

district court must inquire further into the alleged conflict. See *State v. Taylor*, 266 Kan. 967, 974-75, 975 P.2d 1196 (1999).

Appellate courts review a district court's actions carrying out this obligation for an abuse of discretion. *McDaniel*, 306 Kan. at 606. A court abuses its discretion when its decision is arbitrary, fanciful, or unreasonable or based on a mistake of fact or law. *State v. Moyer*, 306 Kan. 342, Syl. ¶ 4, 410 P.3d 71 (2017). When a potential conflict of interest arises as to an attorney's representation, a district court can abuse its discretion in three ways: (1) by failing to inquire about a potential conflict; (2) by failing to appropriately inquire (by not investigating the basis of the complaint or the facts underlying it); and (3) by reaching an unreasonable result after an appropriate inquiry. *McDaniel*, 306 Kan. at 606-07; see also *State v. Toothman*, 310 Kan. 542, 554, 448 P.3d 1039 (2019) (describing appropriate inquiry).

Kansas decisions have recognized that, by its very nature, a court's inquiry into an alleged conflict of interest requires the defense attorney "to walk a delicate line." *Pfannenstiel*, 302 Kan. at 766. The attorney may truthfully recount facts or make an evaluative statement regarding trial strategy. See 302 Kan. at 766-67; see also *State v. Jarmon*, 308 Kan. 241, 251, 419 P.3d 591 (2018) (attorney's statement that client misunderstood something does not create conflict); *McDaniel*, 306 Kan. at 611-12 (attorney's comments about merits of motion previously filed but not currently before the court did not create a conflict of interest). But an attorney must not advocate *against* his or her client's position. *Prado*, 299 Kan. at 1259.

The Kansas Supreme Court discussed an analogous circumstance to this case in *Prado*. There, the defendant similarly filed a presentence motion to withdraw a plea. In that motion, the defendant alleged that his attorney had not "'explained things properly,'" including the nature of the charges and the effect of his plea. 299 Kan. at 1258. The *Prado* court indicated that, based on these allegations, both the district court and Prado's

7

attorney were "on notice of the nature of the potential conflict" of interest, triggering "the court's duty to further inquire." 299 Kan. at 1259.

The *Prado* court also observed that defense counsel's statements to the district court "explicitly advocated against Prado's interest." 299 Kan. at 1259. There, the attorney addressed the court regarding the defendant's allegations of deficient communication, stating: "'We've had extensive discussions. I didn't file a motion to withdraw [from representing Prado] based on conflict because I didn't see a conflict.'" 299 Kan. at 1259. In other words, as the Kansas Supreme Court noted, the attorney "argued against the merits of Prado's motion to withdraw his plea." 299 Kan. at 1259.

The *Prado* court held that under these circumstances, "an actual conflict of interest existed." 299 Kan. at 1260. Thus, the court reversed the denial of Prado's motion to withdraw a plea, vacated his sentence, and remanded the case with directions to appoint conflict-free counsel and hold a new hearing on that motion. 299 Kan. at 1261.

The facts in this case are similarly problematic. Smith's motion to withdraw his plea indicated that he was alleging a conflict of interest. That motion asserted that Smith's attorney had not discussed various matters with him, including potential defenses that may have been raised at trial. At the hearing, Smith additionally indicated that his attorney had not discussed the effect of his plea on his pending pro se motion to dismiss. As in *Prado*, these allegations were sufficient to place the district court on notice of a potential conflict of interest between Smith and his attorney.

Our review of the record indicates that the court was aware of this potential conflict. But the court did not inquire into the nature of the conflict between Smith and his attorney—as the court had conscientiously done on the two previous occasions when Smith sought appointment of new counsel. Instead, the court's questioning inquired into the *merits* of Smith's allegations. That is, as in *Prado*, the court skipped the "critical step"

8

of determining whether Smith must be appointed conflict-free counsel to represent him and erroneously focused on the merits of his motion. See 299 Kan. at 1259.

These problems were exacerbated by Smith's attorney's statements at the hearing regarding his personal assessment of the plea-withdrawal motion. As the attorney was theoretically arguing Smith's motion to the court, he indicated, "I don't know that he's asking the Court for anything the Court can grant because I don't think he's met any of the statutory burdens to withdrawing his plea." And in answering the court's questions regarding Smith's allegations as to breakdowns in communication regarding Smith's potential defenses, the attorney stated, "I talked to him at length about things like that." In other words, Smith's attorney—as in *Prado*—expressly argued against the merits of Smith's motion. Smith was thus left in a position where the person who was in theory representing his interests and presenting his arguments to the court was in practicality advocating a position adverse to his interests.

We understand the difficult position that confronted the district court and Smith's attorney with Smith's motion to withdraw his plea. But the practical frustration a court may experience does not diminish Smith's Sixth Amendment right to be represented by counsel unimpaired by conflicts of interest or divided loyalties. Our review of the record shows there was an actual conflict of interest between Smith and his attorney. Under these circumstances, the district court abused its discretion when it proceeded to hear the merits of Smith's motion without first appointing conflict-free counsel to represent him.

We are left to consider the proper remedy in light of this error. In cases where district courts abuse their discretion by failing to further inquire about alleged conflicts of interest—and "in the absence of a suitable record on appeal concerning the alleged conflict of interest"—the appropriate remedy is often "to remand to the trial court for a determination of whether the defendant can 'establish that the conflict of interest adversely affected his counsel's performance.'" *State v. Vann*, 280 Kan. 782, 792, 127

9

P.3d 307 (2006) (quoting *State v. Gleason,* 277 Kan. 624, 653-54, 88 P.3d 218 [2004]). Such a remand is not necessary here, however, as the record is sufficiently developed for us to conclude that an actual conflict of interest existed.

Because the record demonstrates an actual conflict, that conflict necessarily adversely affected Smith's counsel's performance and prejudice is presumed. See *United States v. Cronic*, 466 U.S. 648, 659-60 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984); see also *Mickens v. Taylor*, 535 U.S. 162, 172 n. 5, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002) (holding "'actual conflict'" for Sixth Amendment purposes is necessarily conflict of interest adversely affecting counsel's performance); *Sharkey*, 299 Kan. at 101 (presuming prejudice when defendant was "constructively denied his right to counsel because of his attorney's conflict of interests"). We therefore reverse the district court's denial of Smith's motion to withdraw his plea and remand to the district court to appoint conflict-free counsel to represent Smith at a new hearing on that motion.

Before concluding, we pause to address the scope of today's decision and offer two observations in this regard.

- *First*, we have found the court erred when it proceeded to consider the merits of Smith's motion to withdraw his plea without appointing conflict-free counsel to represent Smith's interests. In light of this error and the prejudice that flows from it, we do not reach the merits of the plea-withdrawal motion itself and provide no assessment as to whether the allegations contained in that motion and discussed at the hearing constitute good cause to withdraw Smith's plea before sentencing.

- *Second*, because Smith filed the motion to withdraw his plea before sentencing, the merits of that motion must be addressed before any sentence is imposed. Accordingly, we vacate Smith's sentence. We note, however, that if a sentence is later imposed in this case, both Smith and the State agree that the sentencing court

10

must inquire as to the circumstances giving rise to Smith's 1987 conviction of terroristic threat to determine whether that conviction may be factored into Smith's criminal history based on *State v. Boettger*, 310 Kan. 800, 822-23, 450 P.3d 805 (2019), *cert. denied* 140 S. Ct. 1956 (2020). See K.S.A. 2020 Supp. 21-6810(d)(9).

We reverse the district court's denial of Smith's motion to withdraw his plea, vacate his sentence, and remand the case to the district court with directions that the court appoint conflict-free counsel to represent Smith at a new hearing on his plea-withdrawal motion.

Reversed, sentence vacated, and case remanded with directions.